## 1596

MYRTLE BEACH FARMS CO., Appellant v.
Robert J. HIRSCH, Respondent.

(401 S.E. (2d) 196)

Court of Appeals

*L. Sidney Connor, IV* of *Nelson, Mullins, Riley & Scarborough,* Myrtle Beach, *for appellant.*

*E. Windell McCrackin* of *McCrackin, Barnett & Richardson,* Myrtle Beach, *for respondent.*

Heard Dec. 4, 1990.

Decided Jan. 21, 1991.

GOOLSBY, Judge:

Myrtle Beach Farms Co. appeals the denial of its request for an injunction to enforce certain restrictive covenants placed on property it deeded to Robert J. Hirsch. We affirm in part, reverse in part, and remand.

On September 8, 1976, Myrtle Beach Farms conveyed to Hirsch 2.76 acres of land located on a frontage road near the intersection of Tenth Avenue North and Highway 17 Bypass close by the city limits of the City of Myrtle Beach. The tract Myrtle Beach Farms sold Hirsch is completely surrounded by other property owned by Myrtle Beach Farms.

One restriction in Hirsch's deed reserves the right to Myrtle Beach Farms, as grantor, "to approve or reject the nature of [any] proposed use to be made of the premises, which approval will not be unreasonably withheld, provided that in the opinion of [Myrtle Beach Farms], the use will not be injurious to the use of neighboring properties." A second restriction prohibits any "temporary structures" from being "erected upon this property."

About three years ago, Hirsch allowed a lessee to begin

using the property as the site for a helicopter ride service and to construct on the premises a landing pad for helicopters and a gazebo for use by waiting passengers. Myrtle Beach Farms neither approved the lessee's use of the property nor the construction of the landing pad and gazebo.

This action followed when Hirsch, after repeated objections from Myrtle Beach Farms, took no action to prohibit his lessee from operating the helicopter service on the property.

## I.

Myrtle Beach Farms first contends the trial court erred in concluding that Myrtle Beach Farms' withholding of approval for the use of the property as the site for a helicopter ride service was unreasonable and arbitrary.

The obvious purpose of a covenant that requires approval for proposals regarding the use of property is to afford protection to neighboring property owners against injury, whether in the form of diminished property values or otherwise, that would result from a proposed use. *See Syrian Antiochian Orthodox Archdiocese of New York and All North America v. Palisades Associates*, 110 N.J. Super. 34, 36, 264 A. (2d) 257, 258 (1970) (discussing the purpose of a covenant that allowed disapproval of plans "which are not suitable or desirable in [grantor's] opinion"). Where a decision is made under a covenant of this type to withhold approval, the decision must be arrived at in good faith and it must be reasonable. *Palmetto Dunes Resort, a Division of Greenwood Development Corp. v. Brown*, 287 S.C. 1, 336 S.E. (2d) 15 (Ct. App. 1985).

Because this is an action in equity tried by a single judge, we can make our own findings of fact based on our own view of the preponderance of the evidence. *Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976) (dictum). In our view, the decision by Myrtle Beach Farms not to approve Hirsch's use of the property as a site for a helicopter ride service was neither unreasonable nor arbitrary.

The principal basis for its decision, which Hirsch does not claim was arrived at in bad faith, squares well with the covenant's purpose. Myrtle Beach Farms based its decision to withhold approval mainly on its opinion, which it was compe-

tent to make as the owner of the surrounding property, that the use of the subject property as a site for a helicopter ride service would have an adverse impact on the future marketability or desirability of the surrounding property. *Cf. South Carolina State Highway Department v. Rural Land Co.*, 250 S.C. 12, 156 S.E. (2d) 333 (1967) (trial court did not abuse discretion in allowing an executive manager familiar with the nature and use of the subject property and in charge of purchasing to testify as to damages in a condemnation case); *Cooper v. Cooper*, 289 S.C. 377, 346 S.E. (2d) 326 (Ct. App. 1986) (a property owner is ordinarily competent to testify regarding the value of his property). We cannot say this opinion either is unreasonable or is arbitrarily held, especially considering Myrtle Beach Farms' persistent refusal to lease its own property in the vicinity for the same or similar purpose and considering the zoning ordinance applicable to the subject property, which became effective after the lessee began the questioned use, does not include a helicopter ride service as a permitted use.

We therefore reverse the trial court and remand the case for the trial court to issue an injunction prohibiting further use of this property as a site for a helicopter ride service.

## II.

We find no merit in Myrtle Beach Farms' contention that the trial court erred in not ordering the removal of the helicopter landing pad and gazebo on the ground that their placement on the subject property violated the restriction prohibiting the erection on the property of "temporary structures." The helicopter landing pad and the gazebo are not "temporary structures" but are, as the trial court found, "permanent structures." They are constructed of durable materials and are not readily removable, securely fastened as both are to concrete footings. Indeed, their removal, the evidence shows, would first require that they be disassembled. *See Kidd v. Jody*, 290 Ky. 379, 161 S.W. (2d) 606 (1942) (defining a "permanent structure" as one that may not be readily remedied, removed, or abated at reasonable expense or one of a durable character evidently intended to last indefinitely); Annotation, *What Is "Temporary" Building Or Structure within Meaning of Restrictive Covenant*, 49 A.L.R. 4th 1018 (1986).

## III.

The trial court erred in stating that "[t]he deed did not specify that these restrictions were to be covenants running with the land nor were they designated as being personal." The deed in question, Hirsch agrees, expressly provided that the restrictions were to run with the land. This portion of the trial court's order, therefore, is also reversed. *See Rose v. Florence Harness Co.*, 71 S.C. 127, 50 S.E. 656 (1905) (wherein the court partially reversed the trial court's decision because the defendant admitted to partial liability).

Affirmed in part, reversed in part, and remanded.

LITTLEJOHN, Acting Judge, concurs.

SANDERS, C.J., concurs in a separate opinion.

SANDERS, Chief Judge (concurring):

I fully concur, with the following additional analysis.

There are a wide variety of opinions regarding helicopters. Doubtless, some people think they are among the loveliest creations of humankind. Other people think they are noisy and dangerous. In other words, some people like helicopters; other people don't. The question is not what we think about helicopters. Rather, the question is what Myrtle Beach Farms thinks about them. Under the deed restriction, Myrtle Beach Farms, and only Myrtle Beach Farms, has the right to approve or reject a proposed use of the property. Anyone else's opinion is beside the point. The only limitation on the right of Myrtle Beach Farms is that its approval must not be "unreasonably withheld." It is not unreasonable for a property owner not to want a helicopter constantly taking off and landing near his or her property. This conclusion is not only a matter of common sense, it is supported by the record in this case. Two nearby homeowners testified that, as often as every fifteen minutes, the defendant's helicopter caused violent vibrations within their homes and noise levels which interfered with conversations. *Cf. Palmetto Dunes Resort v. Brown*, 287 S.C. 1, 7, 336 S.E. (2d) 15, 19 (Ct. App. 1985) ("[A]lthough people may reasonably differ as to whether a house is aesthetically appropriate, the covenant is unambiguous in leaving this solitary judgment to Palmetto Dunes.").

I also agree that the structures on the property are not temporary structures within the meaning of the restriction. Of course, no product of human endeavor is permanent in the sense that it can endure forever. Percy Bysshe Shelly, "Ozmandias" (1818).